## Case No. 9,731.

### In re MONTGOMERY.

[3 N. B. R. 430 (Quarto, 109).] [1]

District Court, S. D. New York. Dec. 24, 1869.

BANKRUPTCY—MOTION TO AMEND PROOF—NOTES —NEW NOTES GIVEN—PROOF BY MISTAKE.

Where a creditor proved claims on two old promissory notes, and then applied to amend proof so as to show that a new note had been given in a settlement, in which said two notes

2 [From 3 N. B. R. 426 (Quarto, 108).]
1 [Reprinted by permission.]

were part consideration, and they had been proved by mistake, *held*, application to amend must be denied. The creditor may prove a new claim on the new note, and an examination may be had on application of the assignee into the validity of the claims.

[This case was formerly heard upon application of bankrupt's attorney to be paid counsel fees. Case No. 9,726. It was again heard upon motion of assignee to strike out claim of Baldwin Griffin, a preferred creditor, who had voluntarily surrendered his preference. Id. 9,728. James B. Olney, a creditor, was allowed to file supplemental proof of debt. Id. 9,729. Upon motion of assignee, the proof of debt filed by Jonathan B. Cowles was stricken out. Id. 9,730. It was then heard upon the question of the priorities of creditors. Id. 9,727.]

James B. Olney, solicitor for Thomas Montgomery, a supposed creditor of the above-named bankrupt, moved on affidavit, for leave to amend the proof of the claim of said Thomas Montgomery. The solicitor for the assignee objected to granting such leave, and stated the following ground of objection: 1st. That the application comes too late; that the proof of claim was made on the 24th day of March, 1869, by J. B. Olney, attorney for Thomas Montgomery, on two notes set out in the proof, of seven hundred and eight dollars, each dated October 19, 1853, with indorsements thereon to July, 1864, amounting in the aggregate to nearly two thousand dollars. That by the affidavit of Henry B. Montgomery, he acted as the agent of his father, in bringing and placing in the hands of said J. B. Olney the notes in question, when by the facts as stated by him and his father, he must have known that these notes had been satisfied by the giving of a note of nine hundred and sixteen dollars in 1864; and that no claim has been made, that there was an error in the proof, until it was discovered that the notes of Montgomery and Griffin could not receive a dividend until the claims against H. B. Montgomery were satisfied; and the counsel for the assignee also objects to the amendment upon the ground that the matter above set forth in the last objection shows bad faith; also upon the ground that it appears by proof of claim of Amelia Griffin (wife of Baldwin Griffin, and daughter of Thomas Montgomery), that on the third of November, 1864, Henry B. Montgomery gave Thomas Montgomery his due bill for one hundred and sixty-two dollars and seventy-one cents on settlement. The solicitor for Thomas Montgomery objects to proof of claim of Amelia Griffin being used on this motion, on the ground that it has no bearing on the motion.

By THEODORE B. GATES, Register:

The facts in the case are as follows: Proof was made by James B. Olney, as attorney for Thomas Montgomery, on the 24th of March, 1869, upon three several notes, amounting in the aggregate to one thousand eight hundred and forty-five dollars and twenty-nine cents, which, with five hundred and fifty-four dollars and seventy-one cents interest, the creditor claims to be entitled to receive dividends upon. Two of these notes are for the sum of seven hundred and eight dollars each, and bear date October 19, 1853, and are made by Montgomery and Griffin. They are both payable to B. P. Cowles, or order, one nine months, and the other one year after date. The notes were not indorsed by the payee. The first note is dated April 1st, 1859, for four hundred and twenty-nine dollars and twenty-nine cents, payable one year after date, to Thomas Montgomery, or bearer, and is signed by Henry B. Montgomery. About this note there is no question. Indorsements for interest are made from time to time, on these several notes, down to the 1st of July, 1864, but no part of the principal of either appears to have been paid. The two notes, dated October 19, 1853, were given on account of the sale of certain merchandise (not for money lent, as stated by the proof), by said Cowles to Montgomery and Griffin, who were then copartners, but who dissolved in the fall of 1854. Montgomery purchased the stock, and assumed the debts. Thomas Montgomery is the father of the bankrupt, and Griffin and Cowles were sons-in-law of Thomas. Cowles died, leaving his property, including these notes, to his widow, as part of his personal estate. Soon after the widow died, and these notes went to Thomas Montgomery, the present owner. Henry B. Montgomery swears that he had a settlement with his father in the fall of 1864, of all matters between them except the note of four hundred and twenty-nine dollars and twenty-one cents, and found a balance of nine hundred and sixteen dollars due to his father, and gave him a new note therefor, signed by himself alone, and this he thinks was in November, 1864. That the old notes were not taken up, because his father desired to preserve them a short time, and hold them as memoranda of the settlement, and that deponent has neglected to take them and cancel the same. Henry B. Montgomery was his father's messenger to bring these notes with a power of attorney, to Catskill, and placed them in the hands of his father's lawyer, to be proved in this matter. Indeed, he selected these notes from among the papers of his father, and delivered them to the attorney. Montgomery says he supposed the nine hundred and sixteen dollars was among them. It is a little curious that he did not examine these papers sufficiently to know whether they were the seven hundred and eight dollar or nine hundred and sixteen dollar notes, and it can hardly be credited that he should have picked out not only notes wrong in amount, but also in number, and carried them thirty-seven miles, and placed them in the hands of his father's attorney for proof, and never have discovered his error. But further on in Montgomery's affidavit, he says: That deponent, in the haste and confusion at-

tendant upon the hearing (the first meeting of creditors), did not think of the note of nine hundred and sixteen dollars above referred to, and not until he had seen his father on his return home, did he remember the circumstances of the transaction. He then looked for the nine hundred and sixteen dollar note, but was not able to find it, nor has it been found. The affidavits of Griffin and Olney are not material to the real question involved, except to show that neither Thomas nor Henry B. Montgomery gave any intimation to either of them from March 24th, when the notes were proved, to October 18th, that there was any error in the proof. The claim proven by Amelia M. Griffin is properly in evidence in this matter, and should be considered in connection with this question. It may throw some light upon the subject, and, if so, the court should avail itself of it. That proof is upon a promissory note in the words and figures following: "$162.71. Prattsville, November 3, 1864. Due Thomas Montgomery, on settlement, one hundred and sixty-two dollars and seventy-one cents, with interest. H. B. Montgomery." The proof states that this note was given on a settlement between the parties to it. By reference to the indorsement on the first seven hundred and eight dollar note, I find the following: "Received, November 4, 1864, on the within, interest up to July 1, 1864," and on the other a like indorsement, but dated November 3d, 1864.

I cannot reconcile all these circumstances with the statement of Henry B. Montgomery, that he gave a new note for the balance due on the two old ones. If that had really taken place, why should his father have retained the old notes? The reason given by Henry B. Montgomery is entirely unsatisfactory to my mind. The new note was all the "memorandum" his father required or could have wanted. If he had really given a new note in November, 1864, why should the payment of interest up to July have been indorsed on the old notes on November 1, 1864? If there was a settlement and a new note given in November, 1864, as Henry swears, for nine hundred and sixteen dollars, why should the above note, dated on the 3d of that month, for one hundred and sixty-two dollars and seventy-one cents, "on settlement," have been given? and why should the old notes of Montgomery & Griffin have been proved, if there was a note of Henry B. Montgomery's substituted for them? I think Mr. Montgomery is confused in his recollection of these matters, and that he is entirely mistaken as to the nine hundred and sixteen dollar note. If such a note was given, there seems to have been no consideration for it. The original notes were not surrendered, but were kept until this application was made to amend the proof. Considering the evidence which has been submitted upon this application, with a view to do exact justice between Thomas Montgomery and the other creditor of his son, Henry B. Montgomery, I am con-strained to recommend that the application for leave to amend the proof of claim of Thomas Montgomery be denied..

BLATCHFORD, District Judge. The proper course by which to obtain the relief sought by the alleged creditor is not by an amendment of the proof of debt. The amendment sought relates to a new and different claim from any one of those embraced in the existing proof of debt. The proper course is for the creditor to prove his newly-discovered debt independently. Then an investigation in regard to it can be had, on the application of the assignee, and also an investigation in regard to the two seven hundred and eight dollar notes, and the due bill for one hundred and sixty-two dollars and seventy-one cents, and the claims which ought to be rejected can be determined on the examination and cross-examination, as witnesses, of the alleged creditor himself and the bankrupt, and Mr. and Mrs. Griffin, and all others who know anything of the facts. For these reasons the leave to amend the proof of debt is denied. The clerk will certify this decision to the register, Theodore B. Gates, Esq.